IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

KATHLEEN McHUGH and
DEANNA SCHNEIDER, individually
and on behalf of all persons similarly situated,

                                                                    OPINION and ORDER

               Plaintiffs,

                                                                        11-cv-724-bbc

       v.

MADISON-KIPP CORPORATION,
CONTINENTAL CASUALTY COMPANY,
COLUMBIA CASUALTY COMPANY,
UNITED STATES FIRE INSURANCE COMPANY
and ABC INSURANCE COMPANIES 1 – 50,

               Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

      In this proposed class action, plaintiffs Kathleen McHugh and Deanna Schneider

allege that their houses have been contaminated by toxic vapors released from the

manufacturing facility operated by defendant Madison-Kipp Corporation.  Plaintiffs assert

claims against Madison-Kipp under the Resource Conservation and Recovery Act, 42 U.S.C.

§ 6972, and state common law.  Plaintiffs also assert claims against several insurance

companies who allegedly insured Madison-Kipp.

      Now before the court is plaintiffs' motion for class certification under Fed. R. Civ. P.

1

23, in which they seek certification of the following class:

> Owners and/or residents of the residential property located on South Marquette Street (property addresses ranging from 102 through 230 South Marquette Street) and Waubesa Street (property addresses ranging from 233 through 269 Waubesa Street) in Madison, Wisconsin.

Plts.' Br., dkt. #17, at 5. Plaintiffs seek certification of this class for the limited purpose of determining defendant Madison-Kipp's liability for causing the alleged contamination, the geographical scope of the contamination and classwide injunctive relief. Fed. R. Civ. P. 23(c)(4) ("When appropriate, an action may be brought or maintained as a class action with respect to particular issues."). Madison-Kipp filed a brief in opposition to the motion, which was joined by defendants Continental Casualty Company, Columbia Casualty Company and United States Fire Insurance Company. Dkt. #36.

Also before this court is a motion filed by defendants Continental Casualty Company, Columbia Casualty Company and United States Fire Insurance Company to bifurcate and stay insurance coverage issues until the action between plaintiffs and defendant Madison-Kipp is resolved. Dkt. #62.

I will grant both motions. Despite defendants' objections, I conclude that plaintiffs have satisfied the requirements of Rule 23(a). In addition, I conclude that the class may be "maintained" under Rule 23(b)(3). I will grant class certification for the limited purposes of determining defendant Madison-Kipp's liability for the alleged contamination, the

geographical scope of the contamination and classwide injunctive relief. However, issues regarding individual damages and injunctive relief will be considered individually, rather than on a classwide basis.

With respect to the motion to bifurcate the insurance coverage issues, I conclude that it will be most efficient to stay the coverage issues until the classwide issues are resolved. After the classwide issues have been resolved, the court will consult with the parties in setting a schedule for the issues remaining in the case, including the insurance coverage disputes.

In their amended complaint, plaintiffs allege the following facts relevant to class certification.

FACTS

Plaintiffs Kathleen McHugh and Deanna Schneider are residents of Madison, Wisconsin. Defendant Madison-Kipp Corporation owns and operates a facility located at 201 Waubesa Street in Madison, Wisconsin and has conducted manufacturing operations at the facility since 1967. Until 1989, Madison-Kipp used the chlorinated degreasing solvents "PCE" and "TCE" at the facility. In 2010, PCE and TCE vapors were detected at residential properties on South Marquette Street, including the property owned by plaintiff Schneider. In November 2011, Madison-Kipp performed soil vapor sampling along its property line. On December 19, 2011, the Wisconsin Department of Natural Resources

3

released results of the testing, indicating that PCE and TCE were present in soil vapors around Madison-Kipp's property.

In 2011, defendant Madison-Kipp installed sub-slab vapor mitigation systems at five properties adjacent to the facility to prevent PCE and TCE vapors from entering the houses, including at the homes of plaintiffs McHugh and Schneider.  Thirty-four homes adjacent to Madison-Kipp's property may have been contaminated by toxic vapors from the facility.

OPINION

A. Motion for Class Certification

Plaintiffs have filed claims under the Resource Conversation and Recovery Act and Wisconsin common law, seeking declaratory and injunctive relief, as well as monetary damages for reduced property values, loss of enjoyment, aggravation and annoyance caused by the contamination and threatened contamination from toxic vapors released from defendant Madison-Kipp's facility.  Plaintiffs seek to certify a class of owners and residents of the residential property located near the Madison facility, for the purpose of resolving the issues of Madison-Kipp's liability for causing the alleged contamination, the geographical scope of the contamination and classwide injunctive relief.  Plaintiffs ask the court to follow the procedure affirmed by the Court of Appeals for the Seventh Circuit in Mejdrech v. Met-Coil Systems Corp., 319 F.3d 910 (7th Cir. 2003).  In that groundwater contamination

4

case, the court of appeals held that it was appropriate for the district court to certify a class to resolve the "core questions" "whether or not and to what extent [defendant] caused contamination in the area in question." Id. at 911.  "Whether a particular class member suffered any legally compensable harm and if so in what dollar amount [were] questions that the judge reserved for individual hearings [to be held] if and when [defendant] [was] determined to have contaminated the soil and water under the class member's homes in violation of federal or state law." Id.

Before the court may certify a class, plaintiffs must satisfy the requirements of both Rule 23(a) and (b).  Rosario v. Livaditis, 963 F.2d 1013, 1017 (7th Cir. 1992).  The four prerequisites in Rule 23(a) are:  (1) numerosity, that "the class is so numerous that joinder of all members is impracticable"; (2) commonality, that "there are questions of law or fact common to the class"; (3) typicality, that "the claims or defenses of the representative parties are typical of the claims or defenses of the class"; and (4) adequacy, that "the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a). Next, plaintiffs must show that the proposed class action "may be maintained" as one of the three types of class actions permitted under Rule 23(b).

Additionally, this court makes an initial assessment whether the proposed class representatives have standing and whether the proposed class is "precise, objective and presently ascertainable," an implicit requirement in determining whether a class may be

certified.  E.g., Ruppert v. Alliant Energy Cash Balance Pension Plan, 255 F.R.D. 628, 633 (W.D. Wis. 2009); Blihovde v. St. Croix County, 219 F.R.D. 607, 616 (W.D. Wis. 2003). In this case, neither the proposed class representatives' standing nor the ascertainability of the proposed class is in dispute and neither appears to be a problem.

1.  Numerosity

Rule 23 does not impose a specific minimum number of putative class members before class certification is appropriate; rather, whether the numerosity requirement is satisfied depends on circumstances.  General Telephone Company of the Northwest v. EEOC, 446 U.S. 318, 329 (1980) (numerosity requires an examination of specific facts of each case and imposes no absolute numerical limitations).  The proper inquiry is whether "a class approach would be useful to avoid the practical problems of trying to join many named plaintiffs or otherwise clog the docket with numerous individual suits." Eggleston v. Chicago Journeymen Plumbers' Local Union No. 130, 657 F.2d 890, 895 (1981).  Factors relevant to this inquiry may include whether class members are able to bring individual suits, whether it would be efficient to try individual suits and whether the potential class members are dispersed geographically.  Ellis v. Elgin Riverboat Resort, 217 F.R.D. 415, 421-22 (N.D. Ill. 2003); Betts v. Sundstrand Corp., 1999 WL 436579, *5 (N.D. Ill. June 21, 1999); Stambaugh v. Kansas Department of Corrections, 151 F.R.D. 664, 673 (D. Kan. 1993)

6

(noting that "besides size," courts consider "the inconvenience or inefficiency in trying individual suits, the ability of class members to bring their own suits, the size of the individual claims, a request for injunctive or declaratory relief, the nature of the relief sought, and the location and distribution of class members" in evaluating numerosity) (citing Robidoux v. Celani, 987 F.2d 931, 936 (2d Cir. 1993)).

According to plaintiffs, the proposed class is composed of more than 80 owners or residents of the homes adjacent to defendant Madison-Kipp's facility on Waubesa street. However, defendants contend that the number to consider is 34, which is the number of homes that fall within the class boundaries.  Defendants contend that even if there are technically 80 class members, there are only 34 distinct claims at issue in this lawsuit because all of plaintiffs' claims are property-related.  Thus, whether each property is represented by one person or by all the people who live at or own the property, there can be only 34 distinct claims for diminution in property value or loss of enjoyment of property. Additionally, defendants contend that regardless whether there are 34 or 80 "class members," it would be easy for all potential class members to join as named plaintiffs because they all live within one block of each other.

I agree with defendants that the number of properties affected and the geographic dispersion of the properties is relevant to the numerosity element of Rule 23 in contamination cases such as this one.  Nonetheless, I conclude that plaintiffs' proposed class

satisfies the numerosity requirement.  In particular, it would be inefficient to join 80 plaintiffs, or even 34, for the purpose of resolving the discrete issues of defendant Madison-Kipp's responsibility for contamination, the geographic scope of the contamination and any classwide injunctive relief.  These are complex issues that will require expert testimony to resolve.  If each potential class member proceeded individually on these issues, each plaintiff would have the opportunity to obtain his or her own counsel and experts, participate in discovery and present individual arguments and facts.  This would be burdensome for the court and parties.  Because these liability issues are discrete issues common to all potential class members, it makes much more sense to resolve them on a classwide basis, requiring only one set of submissions from plaintiffs.

Further, several courts in this circuit have certified classes containing fewer than 80 members, concluding that joinder of a smaller number of plaintiffs may be impracticable. E.g., Ellis, 217 F.R.D. at  421-22 (holding that numerosity satisfied for class of 53 who were not widely dispersed geographically and noting that "[i]mpracticability does not mean impossibility, but instead requires plaintiffs to prove that it would be inconvenient and difficult to join all proposed members of the class" ) (citation omitted); In re Bank One Securities Litigation, 2002 WL 989454, *3 (N.D. Ill. May 14, 2002) (noting that "[c]ourts in this district have granted class certification to groups smaller than 30"); Riordan v. Smith Barney, 113 F.R.D. 60, 62 (N.D. Ill. 1986) (compiling cases noting that classes of 10-40

members satisfy numerosity).  The courts certifying smaller classes have concluded that the circumstances of the particular case would make joinder impracticable.  Similarly, in this case, joinder of the class members at this stage would be inconvenient, inefficient and therefore, impracticable.  Thus, plaintiffs have satisfied the numerosity requirement.

2.  Commonality

With respect to commonality, plaintiffs must "demonstrate that the class members 'have suffered the same injury.'"  Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2551 (2011).  Additionally, the common contention "must be of such nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  Id.

Defendants do not deny that commonality is satisfied in this case.  The common questions amenable to classwide resolution include whether there have been releases of hazardous substances and wastes from defendant Madison-Kipp's facility, whether Madison-Kipp is legally responsible for the contamination and the geographic scope of the contamination.  Therefore, plaintiffs have established commonality.

3.  Typicality and Adequacy

Under the typicality requirement, the focus is whether the representative plaintiffs'

9

claims are based on the same legal theory and arise from the same conduct as the claims of the other members of the proposed class. Rosario, 963 F.2d at 1018 (citing De La Fuente v. Stokely-Van Camp, Inc., 713 F.2d 225, 232 (7th Cir. 1983)). Similarly, "[t]he adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent." Amchem Products, Inc. v. Windsor, 521 U.S. 591, 625 (1997). See also CE Design Ltd. v. King Architectural Metals, Inc., 637 F.3d 721, 724 (7th Cir. 2011) ("In many cases . . . the requirement of typicality merges with the further requirement that the class representative will fairly and adequately protect the interests of the class."). To establish that they will represent the interests of the class fairly and adequately, class representatives must show that their claims are not antagonistic to those of the proposed class or in conflict with them, that they have sufficient interest in the outcome of the case and that they are represented by experienced, competent counsel. Rosario, 963 F.2d at 1018.

Defendants do not challenge the adequacy of the named plaintiffs' lawyers and do not argue that plaintiffs' claims are antagonistic to those of the proposed class. Considering that plaintiffs' counsel have litigated several cases with claims similar to those in this case, I conclude that they have the experience and resources to provide representation to the entire class. Additionally, I agree with defendants that the named plaintiffs' claims are not antagonistic to those of the potential class members.

10

Defendants do challenge the typicality of plaintiffs' claims.  In particular, defendants point out that the named plaintiffs and a few class members contend that toxic vapors have intruded into their homes, reduced their property values and diminished their enjoyment of their property.  Other class members have claims based only on the "threat" of vapor intrusion.  Defendants also point out that defendant Madison-Kipp installed vapor migration systems into the homes of only some of the proposed class members; certain members were warned and were aware of the vapor intrusion before others; and each class member suffered differing levels and types of damages.

These potential differences do not undermine the fact that all class members contend that defendant Madison-Kipp should be held liable for the release of and damages caused by hazardous substances.  Thus, despite minor difference in the experiences of the class members, the claims of all class members rely on the same legal theory and arise out of the same course of conduct.  Further, I am certifying the class for the purpose of resolving specific issues that are relevant to plaintiffs' claims and those of each class member.  Fed. R. Civ. P. 23(c)(4).  Thus, plaintiffs have satisfied the typicality and adequacy requirements.

4.  Choosing the Proper Type of Class Action under Rule 23(b)

Because plaintiffs have shown that the proposed class satisfies the four prerequisites set forth in Rule 23(a), the next question is whether the action may be maintained as one

11

of the types of class actions listed in Rule 23(b).  Plaintiffs contend that the class could be maintained under Rule 23(b)(1), (b)(2), or (b)(3), while defendants contend that certification would be improper under any subsection of Rule 23(b).

I conclude that the class may be certified under Rule 23(b)(3), which contains two requirements for class certification:  predominance and superiority.  <u>Szabo v. Bridgeport Machines, Inc.</u>, 249 F.3d 672, 676 (7th Cir. 2001).  Rule 23(b)(3) also provides a non-exhaustive list of four factors to be considered when addressing the predominance and superiority requirements.  A court should consider:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).

With respect to predominance, I conclude that questions of law and fact common to class members predominate over any questions affecting individual members only.  All class members live adjacent to defendant Madison-Kipp's facilities and allege that their homes have been contaminated by toxic vapors.  The overriding legal issue is whether Madison-Kipp has caused contamination and if so, whether its actions violated state or federal law.  Although there are individualized issues, particularly related to damages, these issues will not be resolved on a classwide basis.  Rather, after specific liability issues have been resolved on

12

a classwide basis, individualized issues will be addressed on an individualized basis.

Mejdrech 319 F.3d at 911 ("If there are genuinely common issues, issues identical across all claimants, issues moreover the accuracy of the resolution of which is unlikely to be enhanced by repeated proceedings, then it makes good sense, especially when the class is large, to resolve those issues in one fell swoop while leaving the remaining, claimant-specific issues to individual follow-on proceedings.").   See also Denberg v. United States Railroad Retirement Board, 696 F.2d 1193, 1207 (7th Cir. 1983) (noting that partial class certification to determine only liability may be appropriate under Rule 23(c)(4)).

Additionally, I conclude that a class action is superior to other methods for resolution of core issues: whether or not and to what extent defendant Madison-Kipp caused contamination in the area in question.   Mejdrech 319 F.3d at 911.  There is no suggestion that any class member has started separate litigation on these issues or that another forum would be more appropriate.  There is also no suggestion that the proposed class would present manageability or due process concerns.  Therefore, class certification is appropriate under Rule 23(b)(3).

5.  Appointment of class counsel

Under Fed. R. Civ. P. 23(g)(1), a court that certifies a class must appoint class counsel, taking into consideration "the work counsel has done in identifying or investigating

potential claims in the action"; "counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action"; "counsel's knowledge of the applicable law"; and "the resources that counsel will commit to representing the class." Plaintiffs have shown that their proposed class counsel, Varga, Berger, Ledsky, Hayes and Casey and The Collins Law Firm, PC, satisfy the requirements of Rule 23(g). These firms will be appointed as class counsel.

B. <u>Motion to Bifurcate and Stay Insurance Coverage Issues</u>

Defendants Continental Casualty Company, Columbia Casualty Company and United States Fire Insurance Company submitted a motion to sever and stay the insurance coverage issues until the action between plaintiffs and defendant Madison-Kipp is resolved completely. The insurance companies contend that the coverage disputes involve issues that are entirely separate from the issues that will be litigated between plaintiffs and Madison-Kipp, and that it will be much more efficient to delay discovery related to coverage until the insurance companies know what they will be required to cover. Plaintiffs support the motion, while Madison-Kipp opposes it, contending that bifurcation will increase expenses and result in duplicative discovery and litigation.

I conclude that it makes sense to stay the claims related to insurance coverage until after the class issues have been resolved. In particular, the court will first resolve issues

14

related to defendant Madison-Kipp's liability for causing alleged contamination and the geographical scope of the contamination. The facts relevant to these issues are distinct from those relevant to the coverage disputes.

However, the insurance coverage issues will be stayed only until the class issues are resolved. As the insurance companies admit in their brief in support of their motion to stay, coverage issues include, among others, (1) whether plaintiffs sustained "property damage" as that term is defined by the various policies; (2) whether plaintiffs sustained property damage during any of the relevant policy periods; and (3) whether any plaintiff's claim is barred by the statute of limitations, laches or estoppel. These issues overlap substantially with issues in the underlying environmental contamination cases, particularly with plaintiffs' and the class members' individual requests for damages and injunctive relief. Thus, allowing the insurance companies to delay discovery and litigation of these issues would be highly inefficient.

ORDER

IT IS ORDERED that

1. The motion for certification of a class under Fed. R. Civ. P. 23 filed by plaintiffs Kathleen McHugh and Deanna Schneider, dkt. #16, is GRANTED; a class is certified for the purpose of determining whether and to what extent defendant Madison-Kipp Corp.

15

caused contamination by releasing toxic vapors from its Madison, Wisconsin facility and whether classwide injunctive relief is appropriate. The class is defined as follows:

> A class of owners and/or residents of the residential property located on South Marquette Street (property addresses ranging from 102 through 230 South Marquette Street) and Waubesa Street (property addresses ranging from 233 through 269 Waubesa Street) in Madison, Wisconsin.

2. The Collins Law Firm, PC and the law firm of Varga, Berger, Ledsky, Hayes and Casey and are appointed class counsel under Fed. R. Civ. P. 23(g).

3. The motion to join defendant Madison-Kipp's brief in opposition, dkt. #36, filed by defendants Continental Casualty Company, Columbia Casualty Company and United States Fire Insurance Company is GRANTED.

4. The motion to bifurcate and stay insurance coverage issues, dkt. #62, filed by defendants Continental Casualty Company, Columbia Casualty Company and United States Fire Insurance Company is GRANTED. Discovery and litigation related to insurance coverage issues are STAYED until the class issues are resolved.

5. The parties may have until April, 30 2012 in which to consult and file a joint proposed class notice with the court as required by Fed. R. Civ. P. 23(c)(2). If they cannot agree, the parties should provide the court with an explanation of their disagreements and

16

respective positions on April 30, 2012.

Entered this 16th day of April, 2012.

BY THE COURT:
/s/
BARBARA B. CRABB
District Judge