UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

KATHLEEN McHUGH and
DEANNA SCHNEIDER, Individually
and on behalf of all persons similarly
situated ,

                      Plaintiffs,

   v.

MADISON-KIPP CORPORATION,
CONTINENTAL CASUALTY COMPANY,
COLUMBIA CASUALTY COMPANY,
UNITED STATES FIRE INSURANCE
COMPANY and ABC INSURANCE
COMPANIES 1 – 50,

                      Defendants,

                      --and--

MADISON-KIPP CORPORATION,

                      Cross-
                      Claimant,

   v.

Case No. 11-cv-724-bbc

CONTINENTAL CASUALTY COMPANY,
COLUMBIA CASUALTY COMPANY and
UNITED STATES FIRE INSURANCE
COMPANY,

                      Cross-Claim Defendants,

                      --and--

CONTINENTAL CASUALTY COMPANY and
COLUMBIA CASUALTY COMPANY,

     Cross-Claimants/Third-Party Plaintiffs,

   v.

MADISON-KIPP CORPORATION,

    Cross-Claim Defendant,

and

LUMBERMENS MUTUAL CASUALTY COMPANY, AMERICAN MOTORISTS INSURANCE COMPANY, and JOHN DOE INSURANCE COMPANIES 1-20,

    Third-Party Defendants.

**DEFENDANT MADISON-KIPP CORPORATION'S MOTION TO STRIKE SUPPLEMENTAL, ORAL OPINIONS OF PLAINTIFFS' EXPERT LORNE G. EVERETT**

Defendant Madison-Kipp Corporation moves to strike all supplemental opinions of Plaintiffs' expert Dr. Lorne G. Everett. Plaintiffs' expert offered numerous opinions at his deposition – which Plaintiffs rely upon at the summary judgment stage – though Plaintiffs never supplemented his expert report. Plaintiffs' failure to supplement violates Rules 26, 37 and this Court's Preliminary Pretrial Conference Order and, therefore, must be stricken.

**I.    DR. EVERETT'S SUPPLEMENTAL OPINIONS MUST BE STRICKEN.**

Any supplemental report from Dr. Everett was due five days before his February 14, 2013 deposition. The Court's Preliminary Pretrial Conference Order unambiguously states the deadline:

> Supplementation pursuant to Rule 26(e) is limited to matters raised in an expert's first report, must be in writing and *must be* served no later than five calendar days before the expert's deposition, or before the general discovery cutoff if no

2

> deposes the expert. . . . Failure to comply with these
> deadlines and procedures could results in the court striking
> the testimony of a party's experts pursuant to Rule 37.

(Dkt. # 14 at 2 (emphasis added).) Dr. Everett was deposed on February 14, 2013. (*See* dkt. # 188.) Thus, any supplementation of his expert reports was due February 9, 2013. Dr. Everett's supplemental opinions, provided after that day and offered for the first time orally at deposition are untimely and must be stricken for failure to comply with the Court's order and the requirements of Rule 26. This also includes Dr. Everett's declaration submitted in opposition to Madison-Kipp's motion for summary judgment.

## II.   DR. EVERETT RELIED UPON MATERIALS PRODUCED WELL BEFORE THE TIME FOR SUPPLEMENTATION.

At his deposition, Dr. Everett first identified – orally – new opinions he intended to offer in this case. Dr. Everett's new opinions were based on various documents. The entire set of documents was marked as Exhibit 2, and each separate document was individually marked as Exhibits 2A through 2L. (Dkt. # 188-6 through #188-23.)

As shown below, these documents were produced well before the time for supplementation with one exception.[1] In fact, other than the one document, all other documents relied upon by Dr. Everett for his "supplemental" opinions were produced no later than January of 2013 and a few were produced or available well before his

---

[1] The sole exception was a letter dated February 14, 2013 from Arcadis regarding "Building Subsurface Investigation Summary." This letter, which relates to soil investigation under the Madison-Kipp facility, was provided to Plaintiff on the morning of February 14, 2013. With respect to that lone document, Dr. Everett testified very briefly regarding the soil results in that letter. (Dkt. # 188 at 9, 15 (Depo. p. 36:19-23; 62:18-23).) Madison-Kipp does not challenge Plaintiffs' right to supplement solely as to soil results reflected in that February 14 letter.

3

original expert report (from December 3, 2012). The following table summarizes the documents introduced as Exhibit 2A-2L during Dr. Everett's deposition:

| Exhibit number | Date of production | Source |
| --- | --- | --- |
| 2A | May 15, 2012 | Produced by Plaintiff |
| 2B | January 16, 2013 | Produced by MKC |
| 2C | Publicly available document from March of 2011 | Identified by MKC's Expert Thomas Johnson in his January 21, 2013 Report |
| 2D | January 16, 2013 | Produced by MKC |
| 2E | January 16, 2013 | Produced by MKC |
| 2F | January 16, 2013 | Produced by MKC |
| 2G | January 16, 2013[2] | Produced by MKC |
| 2H | January 16, 2013 | Produced by MKC |
| 2I | January 16, 2013 | Produced by MKC |
| 2J | January 16, 2013 | Produced by MKC |
| 2K | January 16, 2013 | Produced by MKC |
| 2L | Publicly available document from 1962 | Identified by MKC's Expert Thomas Johnson in his January 21, 2013 Report |

---

[2] While Madison-Kipp produced exhibits 2G-2K (emails to the DNR regarding results for monitoring wells 13-17) on January 16, 2013, these documents would have been available almost immediately in the DNR's files. Dr. Everett updated the map on Exhibit 2A with handwritten notes reflecting the results from these emails for monitoring wells 13-17.

A.  **EXCLUSION IS MANDATORY UNLESS THE LATE DISCLOSURE IS JUSTIFIED OR HARMLESS.**

An expert's report must be disclosed "at the time[] and in the sequence that the court orders." Fed. R. Civ. P. 26(a)(2)(D). Failure to comply with Rule 26(a)(2) results in exclusion of that testimony as "evidence on a motion, at a hearing, or at a trial." *See* Fed. R. Civ. P. 37(c)(1). The Seventh Circuit has held that violation of Rule 26(a)(2) requires "automatic and mandatory" exclusion of the expert's testimony, unless the offending party can establish that its violation was either "justified or harmless." *Keach v. U.S. Trust Co.*, 419 F.3d 626, 639 (7th Cir. 2005) (quoting *David v. Caterpillar, Inc.*, 324 F.3d 851, 857 (7th Cir. 2003)).

In determining whether the untimely disclosure of expert testimony is harmless, the Court should consider the following four factors: (1) the prejudice or surprise to the party against whom the evidence is offered; (2) the ability of the party to cure the prejudice; (3) the likelihood of disruption to the trial; and (4) the bad faith or willfulness involved in not disclosing the evidence at an earlier date. *David*, 324 F.3d at 857.

Here, it is questionable whether the "justified or harmless" standard applies as Dr. Everett never properly supplemented by providing a written supplement in accordance with the requirements of Rule 26 and this Court's scheduling order. Indeed, the cases from this district regarding late disclosures (and exclusion of those late disclosed opinions) occur where the expert prepares a supplemental report. *See General Electric Co. v. SonoSite, Inc.*, 641 F. Supp. 2d 793, 798-800 (W.D. Wis. 2009) (striking supplemental report though provided more than 5 days prior to expert's deposition).

**B. DR. EVERETT'S SUPPLEMENT IS NEITHER JUSTIFIED NOR HARMLESS.**

Plaintiffs made a clear choice not to prepare a supplemental report. This decision violates Rule 26(a)(2)(B)(i) which requires a written report containing "a complete statement of *all* opinions the witness will express. . . ." (Emphasis added). Given Plaintiffs' tactical decision to forego preparation of a supplemental report, there can be no argument that Plaintiffs' late opinions were justified or harmless. Based upon Plaintiffs' failure to provide a supplemental report, Madison-Kipp's counsel was left with trying to divine Dr. Everett's new opinions *orally during his deposition*.[3] Thus, when asked about the information from monitoring wells 13-17 (which was available at least a month before his deposition), Dr. Everett, a full-time professional witness, did not simply state all his new opinions or provide even a prepared outline of his new opinions. Instead, Madison-Kipp's counsel had to thoroughly cross-examine Dr. Everett to pry out each opinion. The testimony is set forth in Docket # 188 at pages 22-63 (docket pages 5-15) and will not be re-stated here. A review of the testimony on those pages shows that Dr. Everett's supplemental opinions were provided in the form of lengthy, vague statements that were frequently not responsive to the question asked.

There can be no justification for these late opinions, particularly without a written report. And, there is no question that Plaintiffs had the documents (identified in Exhibit 2) well before Dr. Everett's deposition. Given this decision and timing,

---

[3] Madison-Kipp's counsel objected to Dr. Everett's attempt to supplement his opinions orally at his deposition, noted the Court's 5-day supplementation rule and conducted the deposition while reserving all rights to object to Dr. Everett's new opinions. (Dkt. # 188 at 5 (Depo. p. 22:5-24:15).)

6

Plaintiffs cannot offer any justification for failure to timely supplement. At a minimum, Plaintiffs could have had Dr. Everett prepare a supplemental report prior to his deposition. Without any written report, as required by Rule 26(a)(2)(B), there can be no justification and the question becomes one of harm.

Plaintiffs' belated disclosure is not harmless as Madison-Kipp is certainly prejudiced by Dr. Everett's late opinions. Because Dr. Everett's opinions were not provided in written format and only divulged under cross-examination, Madison-Kipp is without the benefit of a written record of his precise opinions.

The harm is particularly acute given that Dr. Everett offered numerous, vague opinions. For instance, at one point, Dr. Everett testified that the data raised questions such as why Madison-Kipp was not digging more, how did the PCBs get in the soil and why weren't "they looking at the hydraulic fluids." (Dkt. # 188 at 10 (Depo. p. 40:1-24).) His testimony also tended to be hyperbolic and non-specific. For example, he said the data was "unconscionable" and "shocking," and his opinion regarding DNAPL was that the "DNAPL condition is huge." (Dkt. # 188 at 12 (Depo. p. 48:3-6).)

In the same breath, Dr. Everett opined that the PCE under the building was "high but not that high." (*Id.*) Similarly, he said the groundwater contamination was "very, very high" and it was going to be "a large distance offsite to the north and to the south and to the east and to the west." (Dkt. # 188 at 7 (Depo. p. 28:14-17).) In essence, his testimony was that the concentrations were high and were everywhere, or would be everywhere at some point. Madison-Kipp is not entirely sure based on this testimony.

7

Later, Dr. Everett said that there was going to be a "very, very high concern." (Dkt. # 188 at 10 (Depo. p. 42:7-10).) With respect to City Well 8, Dr. Everett summarily declared that the Madison-Kipp site is "in direct hydraulic connections" with that City Well and he thought the City of Madison would be "highly, highly agitated when they find out these huge concentrations" and that the drinking water supply "is now compromised for the foreseeable future." (Dkt. # 188 at 7 (Depo. p. 29:2-14)).[4] Again, there was no specificity provided. Unfortunately, this type of non-specific, off-the-cuff "opinion" is inevitable without the procedural safeguards of a written report under Rule 26(a)(2)(B).

Even if Madison-Kipp could decipher all of Dr. Everett's supplemental opinions from his testimony, Madison-Kipp does not have the ability to cure the prejudice necessarily attendant to this late supplement. While Madison-Kipp was able to ask Dr. Everett questions about his new opinions, Madison-Kipp was forced to do so without a roadmap (expert report) and off-the cuff during Dr. Everett's deposition (conducted in California and requiring the presence of counsel for the insurers, Madison-Kipp and Plaintiffs), which has concluded.

Even if Dr. Everett were to provide a supplement now – after his deposition – it is very likely that this would impact trial. At a minimum, the parties are beyond the summary judgment stage and Madison-Kipp would have to re-depose Dr. Everett (following a new report), supplement its motion for summary judgment, and hope to

---

[4] Madison-Kipp assumes Dr. Everett does not intend to offer expert opinions on damages, though he testified that "home values" were "being damaged by badly contaminated water now flowing under their facilities." (Dkt. # 188 at 8 (Depo p. 35:19-22).)

8

get this all done before the matter proceeds much closer to trial in August. Further, all this work would have to take place during critical late stages of this case, including the preparation of damages reports, continued discovery (including numerous depositions of Madison-Kipp's experts) and final pre-trial preparation. Finally, Madison-Kipp is prejudiced because its experts did not have access to Dr. Everett's opinions when they prepared their responsive reports. Thus, if Dr. Everett were to prepare a supplemental report now, Madison-Kipp would obviously have to have its experts prepare supplemental responsive reports. The case is too close to trial and too far along to permit this much work and disruption to the process.

    For the same reasons, Plaintiffs cannot cure the prejudice to Madison-Kipp. Having made the decision to not prepare a supplemental report and to simply have Dr. Everett shoot from the hip at his deposition, Plaintiffs cannot now try to remedy the prejudice to Madison-Kipp. Even if Plaintiffs paid all costs and fees for deposing and re-deposing Dr. Everett as well as all costs and fees for preparation of new reports by Madison-Kipp's experts, Madison-Kipp is still left with trying to jam all of this work in within the next few months. Madison-Kipp is already fighting on two fronts (against Plaintiffs and the insurers), and it is simply not fair to require Madison-Kipp to further stretch its already thin resources merely because Plaintiffs deliberately decided to ignore Rule 26. At this late stage in the proceedings, there is no cure to Madison-Kipp's prejudice other than to strike Dr. Everett's supplemental oral opinions.

    Further, with respect to harm, courts consider whether the late disclosure was made in bad faith or was willfully done. While Madison-Kipp has no evidence of bad

faith, there certainly is no showing of good faith where Plaintiffs left it to Madison-Kipp's counsel to uncover Dr. Everett's supplemental opinions. But the Court need not delve into bad faith, as the record plainly demonstrates that Plaintiffs made a deliberate – or willful – decision to not submit a written report. That decision cannot be undone at this point.

Even after Dr. Everett's deposition, Plaintiffs have not prepared a supplemental report. Perhaps worse, Plaintiffs even try to take advantage of Dr. Everett's oral disclosure of his supplemental opinions by having Dr. Everett merely reaffirm what he said at his deposition in response to Madison-Kipp's motion for summary judgment. Thus, Dr. Everett declares his disagreement with various opinions from Madison-Kipp's experts for "reasons stated during" his "deposition." (Dkt. # 193 at 2-4.) This disclosure does not cure the problem; it only exacerbates it, as Plaintiffs want to use the non-specific and conclusory testimony of Dr. Everett in order to oppose Defendants' summary judgment motion. Plaintiffs should not be permitted to finesse the rigors of Rule 26 and their decision to forego supplementation in writing can only be viewed as intentional.

With respect to Dr. Everett's declaration in response to Madison-Kipp's summary judgment motion, that declaration and the exhibits to it should be stricken as well. (Dkt. ## 193, 193-1, 193-2.) While his declaration really does not offer any specific opinions, the exhibits to his declaration are entirely new and were not produced before by Dr. Everett or Plaintiffs. (Dkt. ## 193-1, 193-2.) According to Dr. Everett, the exhibits were based on the documents identified at his deposition and produced after

his first report in December of 2012. (Dkt. # 193 at para. 2.) As shown in the table above, however, these October 2012 emails were produced no later than January 13, 2013. This was one month before Dr. Everett's deposition, and Plaintiffs have offered no excuse for Dr. Everett's failure to produce these new plume maps prior to his deposition.

Indeed, these new plume maps are the very pinnacle of prejudice. (Dkt. ## 193-1, 193-2.) Dr. Everett had the data before his deposition and never bothered to create these maps until after his deposition and after Madison-Kipp moved for summary judgment. Madison-Kipp's motion for summary judgment and its experts' responsive reports were based on the data and opinions in Dr. Everett's original report. The only way this entire issue is remedied is by new reports, new dispositive motion deadlines, and a new trial date, along with Plaintiffs' reimbursement of all expenses associated with those events. It is not fair to permit Plaintiffs to not provide details about supplemental opinions in written format and then create maps after the fact in order to avoid summary judgment. This evidence must be stricken.

Finally, much of Dr. Everett's testimony regarding his supplemental opinions was an (improper) attempt to rebut the responsive expert opinions of Madison-Kipp. Dr. Everett testified for instance that:

1. the data flew "in the face of what [Dr.] Johnson says that site will be cleaned up in two decades" (Dkt. # 188 at 7 (Depo. p. 28:1-4));
2. he believed it was "unconscionable" to say there was no risk to families (Dkt. # 188 at 7 (Depo. p. 30:6-14));

11

3. the data contradicted Madison-Kipp's experts' PAH report and that the site had been completely characterized (Dkt. # 188 at 9 (Depo. p. 37:3-6));

4. Arcadis didn't know the direction of the groundwater flow, didn't know the sources, did not have a conceptual model and no plan to clean up the site (Dkt. # 188 at 9 (Depo. p. 37:12-18));

5. He questioned why Arcadis was excavating some of the backyards and that Arcadis was denying that the source was Madison-Kipp though he had walked the backyards and had seen fans that had tars on them (Dkt. # 188 at 10 (Depo. p. 40:1-41:7));

6. The presence of benzo(a)pyrene in the backyards contradicted Arcadis' opinion on benzo(a)pyrene and naphthalene (Dkt. # 188 at 11 (Depo. p. 47:1-15)); and

7. The "hottest" well was at the Madison-Kipp property which must have been a complete "surprise" to Arcadis "because they haven't characterized it" (Dkt. # 188 at 13 (Depo. p. 52:14-17)).

Unquestionably, two of the documents – Exhibits 2C and 2L –were publicly available long before Dr. Everett's December, 2012 report. Thus, his new opinion testimony on those documents was clearly directed at rebutting Dr. Johnson's reliance on those documents. (Dkt. # 188 at 10-11 (Depo. p. 41:15-44:22); *id.* at 14-15 (Depo. p. 59:9-61:13).) The Federal Rules and this Court's scheduling Order do not permit a *third* round of expert reports. As a result, these opinions must be stricken.

## CONCLUSION

Plaintiffs demanded – and received – a fast trial date. Having come to this Court and sought its short time to trial, Plaintiffs agreed to abide by this Court's rules. Perhaps most important of these rules is the Court's scheduling order and interconnection with Rule 26.

The issue here is significant, and the prejudice is profound given the status of the case. That prejudice is made all the worse by the lack of a written supplemental report. This was clearly a tactical decision by Plaintiffs, and Plaintiffs must suffer the "mandatory" and "automatic" sanction of exclusion. The record, in any event, cannot support a conclusion that Plaintiffs' belated disclosure was either justified or harmless.

At a minimum, the Court cannot permit Dr. Everett to offer rebuttal opinions in his supplemental report. This Court and the Federal Rules do not permit a third round of expert reports, and Dr. Everett's clear attempt to contradict the expert opinions offered by Madison-Kipp flies in the face of those well-established rules.

Dated this 4th day of April, 2013.

                                       **MICHAEL BEST & FRIEDRICH LLP**

                                       By:    s/ John C. Scheller
                                                John C. Scheller
                                                Leah H. Ziemba
                                                Albert Bianchi, Jr.
                                                One South Pinckney Street, Suite 700
                                                Madison, WI 53703
                                                Telephone: (608) 257-3501
                                                Fax: (608) 283-2275
                                                Email: jcscheller@michaelbest.com
                                                                 lhziemba@michaelbest.com
                                                                  abianchi@michaelbest.com

                                                John A. Busch
                                                Lee M. Seese
                                                100 East Wisconsin Avenue, Suite 3300
                                                Milwaukee, WI 53202-4108
                                                Telephone: (414) 271-6560
                                                Fax: (414) 277-0656
                                                Email:    jabusch@michaelbest.com
                                                                  lmseese@michaelbest.com

                                                *Attorneys for Defendant Madison-Kipp Corporation*

14