# EXHIBIT A

## SETTLEMENT AGREEMENT AND LIMITED RELEASE

This Settlement Agreement and Limited Release (the "Agreement") is entered into by and between Kathleen McHugh and Deanna Schneider (collectively, the "Class Representatives"), on behalf of themselves and the certified class described below, on the one hand, and Madison-Kipp Corporation ("MKC"), Continental Casualty Company ("Continental"), Columbia Casualty Company ("Columbia"), and United States Fire Insurance Company ("U.S. Fire"), on the other hand.  MKC, Continental, Columbia and U.S. Fire are collectively referred to below as the "Settling Defendants."

### RECITALS

**WHEREAS**, MKC owns and operates a certain manufacturing facility (the "Facility") located at 201 Waubesa Street, Madison, Wisconsin;

**WHEREAS**, the Class Representatives own property on S. Marquette Street in Madison, Wisconsin located immediately adjacent to the Facility;

**WHEREAS**, Continental, Columbia and U.S. Fire are insurance companies which issued and/or allegedly issued certain insurance policies to MKC during the 1980s;

**WHEREAS**, on October 20, 2011, the Class Representatives and others filed suit against MKC in the United States District Court for the Western District of Wisconsin, in an action styled <u>Kathleen McHugh, et al. v. Madison-Kipp Corporation, et al.</u>, Case No. 11-cv-724-bbc (hereinafter, the "Lawsuit").  In the Lawsuit, Plaintiffs are represented by The Collins Law Firm, P.C. and Varga Berger Ledsky Hayes & Casey, a Professional Corporation (collectively "Class Counsel");

**WHEREAS**, on January 20, 2012, the Class Representatives filed a First Amended Complaint in the Lawsuit which named MKC, Continental, Columbia and U.S. Fire as

defendants.  In their First Amended Complaint, the Class Representatives asserted class action claims against the Settling Defendants under federal law (the Resource Conservation and Recovery Act, "RCRA") and common law (negligence, trespass, nuisance and willful and wanton misconduct), alleging that certain chemicals, including tetrachloroethylene, were released at the Facility and that such chemicals have migrated from the Facility into residential areas, including onto the Class Representatives' properties and other properties in the area;

WHEREAS, each of the Settling Defendants has filed an answer to the First Amended Complaint, denying that they caused the complained of contamination and denying wrongdoing or liability on any of the claims asserted against them in the Lawsuit;

WHEREAS, on April 16, 2012, the Court entered a certain Opinion and Order (the "Certification Order") in the Lawsuit which certified, pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure, a class consisting of all persons and non-governmental entities that own or reside on the 34 properties on S. Marquette Street and Waubesa Street in Madison, Wisconsin that are depicted on the map attached hereto as Exhibit 1. The foregoing area is hereinafter referred to as the "Class Area;"  The Certification Order approved the Class Representatives to act as representatives of the certified class and appointed Varga Berger Ledsky Hayes & Casey and The Collins Law Firm (collectively, "Class Counsel") to represent the certified class;

WHEREAS, following the entry of the Certification Order, a written "Notice of Class Action Lawsuit," dated May 11, 2012 and approved by the Court in the Lawsuit ("the Notice"), was served on all potential members of the class.  The Notice advised all potential members of the class of the entry of the Certification Order.  The Notice also advised all potential members of the certified class of their right to opt out of the class and set forth the procedures that were to

2

be followed by any person desiring to be excluded from the certified class.  Virginia Morehouse, the owner of the property located in the Class Area at 218 S. Marquette, was the only potential Class member who exercised her right to be excluded from the class.  As a result, the certified class in the Lawsuit, whose rights are now affected by this Agreement, is comprised of the owners and residents of the 33 properties in the Class Area other than the excluded 218 S. Marquette Street property (hereinafter, the "Class"). The addresses of the properties that are included in the Class are identified on the attached Exhibit 2;

WHEREAS, Settling Defendants do not admit that they or any one of them or their predecessors or present or former officers, agents, or employees have engaged in any illegal or wrongful activity, and deny any and all wrongdoing or liability whatsoever, including that any of the facts alleged in the First Amended Complaint  in the foregoing Lawsuit are true, and including but not limited to insurance coverage.  Nonetheless, Settling Defendants have concluded that it is in their best interests and the best interests of the Class to avoid protracted, time-consuming and costly furtherance of the Lawsuit and to settle the Lawsuit on the terms set forth herein; and

WHEREAS, based upon the uncertainty and expense involved in litigation, the parties hereto desire to settle the claims asserted in the Lawsuit, subject to Court approval, on the terms and conditions set forth below;

NOW THEREFORE, in consideration of the foregoing and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged by each party to the other, IT IS HEREBY STIPULATED AND AGREED, by and between the Class Representatives, individually and on behalf of all members of the Class, on the one hand, and the

Settling Defendants, on the other hand, that the Lawsuit shall be compromised and settled, subject to Court approval, on the terms and conditions set forth below.

## TERMS AND CONDITIONS

1.     **Purpose of Settlement**.  This Agreement shall not be construed by anyone as an admission of any liability of any kind by the Settling Defendants, which liability is expressly denied, and shall not be construed by anyone as an admission of any allegation made against any of them in the Lawsuit, including but not limited to insurance coverage.  This Agreement shall not be offered or received in evidence in any action or proceeding in any court or other tribunal as an admission or concession of (1) liability or wrongdoing of any nature on the part of the Settling Defendants or (2) insurance coverage.  This Agreement is being entered into by the Settling Defendants solely to fully and completely settle, resolve and compromise any and all disputes within the scope of this Agreement between or among the Settling Defendants and the Class, as described more fully herein.

2.     **Remediation and Related Undertakings**.  As a settlement benefit flowing to all residents and/or owners of Class Area properties, MKC agrees that it shall continue to perform such investigation and remediation of the Class Area to address environmental conditions at and migrating from the Facility as and to the extent required of MKC by the Wisconsin Department of Natural Resources ("WDNR") and the United States Environmental Protection Agency ("USEPA"), while fully and expressly reserving any and all rights to challenge, appeal, object to, or litigate any decision or indecision of WDNR or USEPA with respect thereto. Such right to appeal, challenge, object to or litigate any decision or indecision of any governmental authority concerning the investigation or remediation with respect to the Facility is broadly reserved to and by MKC with respect to all undertakings herein.  The house-specific remediation obligations

4

listed in paragraphs 2(A) and (B) below do not apply to any properties within the Class Area that have either chosen to opt-out of this Class Action Lawsuit or that choose to opt out of the settlement.  Without limitation of the foregoing, the following remedial and other measures shall be taken with respect to environmental and other conditions in, or potentially impacting, the Class Area:

   A. **Sub-Slab Depressurization Systems**.  MKC, at its sole cost and expense, shall within ninety (90) days of the Effective Date (as that term is defined below in Paragraph 10 of this Agreement) pay for and coordinate the installation of a sub-slab depressurization system ("SSDS") in every Class Area home that does not currently have one and whose property owner submits a Claim Form (as that term is defined below in Paragraph 8(D) of this Agreement) electing to have a SSDS installed on their property.  Such SSDS shall be of like kind and installation as those already installed in certain homes within the Class Area.  MKC shall have no obligation to install any SSDS in any Class Area home that fails to submit a Claim Form pursuant to the procedures defined in Paragraph 8(D) of this Agreement and such failure shall constitute a waiver.  By filing a Claim Form, the property owner grants to MKC a right of reasonable access subject to reasonable advance notice (at least seven (7) days advance notice to the property owners) during normal business hours to perform such installation within the timeframe contemplated hereby.  With respect to these new SSDS units and the existing SSDS units (previously installed in the Class Area by either MKC or WDNR),  MKC shall, at its sole cost and expense, for a period of five (5) years from installation 1) inspect these SSDS units once per year to ensure that they are operating  as designed and installed, 2) repair and maintain these SSDS units to keep them in reasonable operating condition, provided however that, MKC is under no obligation to repair or maintain a SSDS which has been damaged, altered or destroyed

as a result of actions or inactions of anyone other than MKC or MKC's contractors, and 3) replace any SSDS units which are not operating as designed and installed and which cannot otherwise be quickly and cost effectively repaired, in the exercise of MKC's sole discretion; provided however that, MKC is under no obligation to replace, repair or maintain a SSDS which has been damaged, altered or destroyed as a result of actions or inactions of anyone other than MKC or MKC's contractors.

      B.    **Soil Removal**.  For each Class Area home whose property owner submits a Claim Form (as that term is defined below in Paragraph 8(D) of this Agreement) electing soil removal, MKC shall pay for and arrange for the removal of the top one foot (12 inches) of easily accessible exposed soil in areas that are currently maintained as lawn or garden areas (i.e., soil removal is not required in paved areas of these back yards, those areas on which garages or other permanent structures or fixtures are affixed, or areas that would require removal of trees, bushes or shrubs) on that Class Area property's back yard which abuts the Facility, and replace the removed soil with clean fill and sod.  MKC shall have no obligation to re-landscape or otherwise reestablish garden growth in the areas of removed and replaced soil.  Nothing herein requires the Settling Defendants to remove any soils from the side or front yards of any Class Area home. MKC shall have no obligation to remove any soil from any Class Area home whose owner fails to submit a Claim Form electing soil removal pursuant to the procedures defined in Paragraph 8(D) of this Agreement and such failure shall constitute a waiver.  By filing a Claim Form electing soil removal, the property owner grants to MKC a right of reasonable access subject to reasonable advance notice (at least seven (7) days advance notice to the property owners) during normal business hours to perform such soil removal within the timeframe contemplated hereby. MKC shall bear all costs of this work, including the disposal costs of the removed soils. The soil

removal required under this Paragraph 2(B) shall be initiated by MKC within sixty (60) days of

WDNR completing its review and determination of soil PAH issues, if any, or otherwise

providing MKC with written authorization to proceed with such soil removal activities pursuant

to this Paragraph 2(B); provided however that, the time for initiation and completion of the soil

removal contemplated hereby may be extended as a result of weather, permitting or other

intervening occurrences beyond MKC's reasonable control.  Nothing in this Paragraph 2(B),

however, shall be construed to modify, limit, expand or restrict the ongoing PCB removal project

on Waubesa Street currently being conducted under the direction of WDNR and USEPA (the

"Waubesa PCB Project").  The written agreements that have been executed between Waubesa

Street property owners and MKC concerning the Waubesa Street PCB Project, and any further

such written agreements or modifications to existing agreements that may in the future be

executed between Waubesa Street property owners and MKC concerning the Waubesa Street

PCB Project, shall remain in full force and effect and are not limited in any way by this

Agreement.  The Parties further agree that MKC shall not be required by this Paragraph 2(B) to

remove and replace soils on Waubesa Street properties in the areas of those properties where

soils were removed and replaced with new soils pursuant to the Waubesa PCB project, but that

MKC shall be required to remove and replace soils on those properties in areas in those back

yards where soil removal and replacement was not undertaken pursuant to the Waubesa PCB

project.

        C.     **SVE System**.  MKC has installed a soil vapor extraction ("SVE") system

at the Facility to mitigate the generation and migration of vapors off-site from the Facility.

Subject to MKC's reserved right to appeal, challenge, object to or litigate any decision or

indecision of any governmental authority concerning the investigation or remediation with

respect to the Facility, MKC shall continue to operate the SVE system until it is deemed by the WDNR to no longer be required.

   D.  **Vapor Probes**.  MKC has installed a network of vapor probes at the Facility to monitor soil vapor levels.  Subject to MKC's reserved right to appeal, challenge, object to or litigate any decision or indecision of any governmental authority concerning the investigation or remediation with respect to the Facility, MKC shall continue to maintain the existing vapor probe network and continue monitoring vapor levels until the WDNR deems this unnecessary.

   E.  **Groundwater Remediation**.  Subject to MKC's reserved right to appeal, challenge, object to or litigate any decision or indecision of any governmental authority concerning the investigation or remediation with respect to the Facility, MKC will commit to the actions directed by the WDNR relative to groundwater remediation, but at a minimum will deploy in-situ chemical oxidation injection treatment ("ISCO") to the shallow (unconsolidated) zone to mitigate vapor intrusion off-site from the Facility provided such ISCO is approved/permitted by WDNR.

   F.  **Public Drinking Water Supply**.  Subject to MKC's reserved right to appeal, challenge, object to or litigate any decision or indecision of any governmental authority concerning the investigation or remediation with respect to the Facility, MKC will continue to work with WDNR and Madison city officials to take such reasonable steps as necessary to protect City Well 8 or other public drinking water sources from any impact attributable to the Facility.

   G.  **Facility Clean Up and Closure**.  Subject to MKC's reserved right to appeal, challenge, object to or litigate any decision or indecision of any governmental authority

concerning the investigation or remediation with respect to the Facility, MKC will commit to other work as directed by the WDNR or USEPA to restore the environment to the extent practicable and to otherwise achieve regulatory closure or a determination that no further active remediation is needed with respect to the Facility.

3.      **Payment to the Class**.  Within seven (7) days of the Effective Date (as that term is defined below in Paragraph 10 of this Agreement), the Settling Defendants shall jointly pay the Class the total amount of Four Million Six Hundred Thousand Dollars ($4,600,000.00) (the "Settlement Funds"), subject to adjustment as provided in Paragraph 11 of this Agreement.  The payment of the Settlement Funds shall be made by one or more wire transfers to a trust account designated by Class Counsel.

4.      **Limited Release by the Class**.  The Class Representatives and each member of the Class, on their own behalf and on behalf of their predecessors, successors, heirs, estates, executors, administrators, trusts, trustees, beneficiaries, assigns, transferees, attorneys representatives and all others with whom they are in privity, hereby covenant not to sue, release, acquit and forever discharge each of the Settling Defendants, and their past,  present, and future officers, directors, agents, lenders, attorneys, employees, shareholders, administrators, successors, any subsequent purchaser of all or part of MKC's assets, predecessors, assignees, parents, divisions, subsidiaries, affiliates, sister corporations, insurers and reinsurers (collectively the "Released Parties") from and against all claims, demands, damages, trespass or nuisance annoyance damages, obligations, controversies, suits, liabilities, attorneys' fees, expert fees, expenses, RCRA injunctive remedies, any other injunctive remedies, and causes of actions at law or equity, whether or not known now, that in any way arise from or relate to environmental conditions or other conditions of any kind at the Facility or in the Class Area, including but not

limited to any property damage, diminution in property value, loss of the reasonable use and enjoyment of property, or aggravation and annoyance in any way related to or based upon the presence in the Class Area of contaminants, pollutants, vapors, irritants, chemicals, emissions or discharges allegedly originating from the Facility.  This release provision does not, however, preclude or limit in any way the Class Representatives or any Class member from asserting individual claims against any of the Released Parties alleging sickness, disease, physical injury or death alleged to be caused by exposure to chemicals alleged to have been released from the Facility, and does not preclude, affect or limit in any way the Released Parties' defenses to any such preserved claims or allegations, all having been fully reserved.  The Class Representatives, each Class member who does not opt out of this settlement, and Class Counsel warrant and represent to the Settling Defendants that, as of the date of this Agreement, they have not been diagnosed with, are not aware of, and do not have any symptoms that they suspect could be associated with any sickness, disease, or physical injury which may have been caused to them by the action or inaction of any of the Released Parties.  In the event MKC or its contractors perform environmental investigation or remediation in the Class Area after the date this Agreement is executed and filed with the Court, this provision will not act as to release MKC from any claim for damage to real or personal property in the Class Area caused by such future investigation or remediation work nor any claims for compensation related to relocation required by WDNR or USEPA during MKC's performance of such future investigations or remediation work.

     5.    **Notice to the Class**.  Pursuant to Federal Rule of Civil Procedure 23(e), all members of the Class shall receive notice of this settlement.  No later than seven (7) days after the date upon which the Court approves the Notice of Proposed Class Settlement, Class Counsel

shall cause the Notice of Proposed Class Settlement (the "Settlement Notice," a copy of which is attached hereto as Exhibit 3) to be delivered via U.S. Mail to all property addresses within the Class Area as well as known addresses of owners of the properties within the Class Area.

      6.      **Necessary Court Approvals**.  This Agreement is conditioned on the entry of an order granting final approval to this settlement and providing for the entry of judgment in this Lawsuit dismissing the Lawsuit with prejudice, substantially in the form attached hereto as Exhibit 4 (the "Final Approval Order").

      7.      **Event of Non-Approval**.  In the event that the Court denies final approval of this Agreement, or holds that it will not enter the Final Approval Order in substantially the same form as Exhibit 4 to this Agreement, or if the Final Approval Order is modified in any material respect or vacated on appeal, or MKC terminates this Agreement in accordance with paragraph 11, then this Agreement shall become null and void and the Lawsuit will continue *status quo ante*.

      8.      **Distribution of the Settlement Funds.**

      A.      **Attorneys' Fees and Expenses.**  Subject to Court approval, Class Counsel shall receive one-third of the Settlement Funds in attorneys' fees.  In addition, subject to Court approval, Class Counsel shall receive reimbursement in full for all costs and expenses they have to date reasonably incurred in connection with the Lawsuit and will reasonably incur in the future in connection with the implementation of this settlement.  Class Counsel shall be entitled to these payments by deducting these amounts from the Settlement Funds upon receipt thereof. The Settling Defendants shall not oppose Class Counsel's request for payment of attorneys' fees and costs and expenses in these amounts.

B.      **Class Representative Awards**.  Subject to Court approval, the Class Representatives, in consideration of their assumption and diligent performance of the duties and responsibilities of class representatives and the extensive time and effort they expended in connection with the Lawsuit, shall each receive Ten Thousand Dollars ($10,000.00) of the Settlement Funds.  These class representative awards are in addition to the amount of compensation the Class Representatives are entitled to receive as Class members, as specified below in Paragraph 8(C) of this Agreement.  The Settling Defendants shall not oppose the request for awards to the Class Representatives in these amounts.

C.      **Payments to the Class.**  The Class shall receive the balance of the Settlement Funds remaining following payment of 1) the attorneys' fees and expenses to Class Counsel pursuant to Paragraph 8(A) above and 2) the class representative awards pursuant to Paragraph 8(B) above (hereinafter, the "Class Payments").  The Class Payments shall be allocated amongst those members of the Class who submit a Claim Form (as that term is defined below in Paragraph 8(D) of this Agreement) and pursuant to the distribution scheme reflected on Exhibit 5 hereto.  Class Counsel shall distribute the Class Payments to the Class promptly upon receipt of the Settlement Funds and, following completion of same, shall file a certificate with the Court in the Lawsuit attesting that the Class Payments have been distributed to the Class as provided for in this Agreement.  The Settling Defendants have not participated in the preparation of the distribution scheme reflected on Exhibit 6 and shall have no liability or responsibility in regards to the methodology or the actual distribution of the Class Payments by Class Counsel.

D.      **Claims Process**.  Any Class member who owns Class Area property desiring to receive any or all of 1) the monetary settlement benefits available pursuant to Paragraph 8(C) above, 2) the SSDS settlement benefits available pursuant to Paragraph 2(A)

above, or 3) the soil removal settlement benefits available pursuant to Paragraph 2(B) above, must submit a written claim form (the "Claim Form," a copy of which is attached hereto as Exhibit 6) specifying which of these settlement benefits the Class member is electing to receive. The Claim Form shall include a certification that the Class member submitting the claim warrants and represents to the Settling Defendants that they are not presently aware of any sickness, disease, or physical injury caused to them by MKC. The Claim Form shall be mailed by Class Counsel to all Class members with the Settlement Notice and must be completed by Class members and returned to Class Counsel within the time period specified on the Claim Form and in the Settlement Notice.

9. **Waiver of Appeal.** In the event that this Agreement receives final approval by the Court in the Lawsuit in accordance with paragraph 6, the Class Representatives, non-objecting Class members, Class Counsel, and the Settling Defendants hereto waive any right to appeal from any of the orders entered in the Lawsuit, including the Certification Order and the Final Approval Order.

10. **Effective Date.** This Agreement shall become effective (the "Effective Date") on the date that the time has expired within which to appeal the entry of the Final Approval Order without any appeal having been taken, or, if appeal is taken, the date on which such appeal shall have been fully determined (subject to no further appeal) by the highest court before which such appeal is sought or allowed, and such appeal shall have been resolved in such manner as to permit the consummation of the settlement effected by this Agreement in accordance with all of its terms and conditions.

11. **Limited Termination Option.** In the event that more than two (2) owners of separate Class Area properties elect to opt out of the settlement, MKC shall have the right, at its

election in the exercise of its sole discretion, to terminate this Agreement and the settlement provided for herein. If exercised, MKC shall do so within ten (10) days of receiving written notification that more than two (2) owners of separate Class Area properties have elected to opt out of the settlement. Any notice of such termination shall be in writing and delivered to Class Counsel. MKC's right to terminate this Agreement pursuant to this provision shall expire and be of no further legal effect, unless exercised in conformance with this Paragraph 11. In the event that any owner of a Class Area property opts out of the settlement and the Agreement is not terminated, the Settling Defendants shall be entitled to reduce the amount of the overall settlement monetary payment by the ratio of the opting out Class member's assessed value of his/her residence (as reflected on Exhibit 5(A) to this Agreement) to the total assessed value of all Class members' residences multiplied by Four Million Six Hundred Thousand Dollars ($4,600,000.00).

12. **Non-Disparagement**. The parties hereto and their respective counsel agree that they will not make any statements or representations relating to the claims and allegations asserted in the Lawsuit, or direct any other Person to make any statements or representations relating to the claims and allegations asserted in the Lawsuit, that disparage or otherwise impair the reputation, goodwill, or commercial interests of any other party hereto or their respective counsel.

13. **Choice of Law.** This Agreement shall be governed and interpreted according to the laws of the State of Wisconsin.

14. **CAFA Compliance.** In accordance with the statutory requirements listed under 28 U.S.C. § 1715, within ten (10) days of the filing of this proposed class action settlement the Settling Defendants shall notify and serve upon the appropriate State officials of Wisconsin and

the appropriate Federal officials, a notice of this proposed class action settlement and all required accompanying documents under § 1715(b).

15.    **Final Hearing Date.**  In an effort to properly comply with 28 U.S.C. § 1715(d), the Class Representatives, the Settling Defendants and their respective counsel will request that the Court schedule the hearing for final approval of the proposed class action settlement to occur at least 90 days after notice is served on the various government officials in accordance with § 1715(b).  In light of the parties' plan to file this settlement agreement no later than July 15, 2013, the request to the Court will be for a hearing date on the soonest available date for the Court occurring after October 24, 2013.

16.    **Entire Agreement.**  This Agreement and Exhibits referenced herewith represent the entire agreement among the parties and there are no terms, representations, agreements, understandings or covenants, oral or otherwise, that are not incorporated into this Agreement.

17.    **Capacity and Authority.**  All parties entering into this Agreement have the capacity and authority to do so, and no third party has any rights which could affect the validity or legality of this Agreement.

18.    **Terms of Agreement Negotiated.**  This Agreement has been negotiated and drafted by all parties and their representatives.  The parties to this Agreement represent and warrant that they have read and understand this Agreement and have consulted with their respective counsel concerning its legal effect.  No rule of construction shall apply to this Agreement construing its provisions in favor of or against any party.

19.    **Execution in Counterparts.**  This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

20.     **Amendment or Modification.**  This Agreement may be amended or modified only by a written instrument signed by all parties to this Agreement.

21.     **Originals.**  Facsimile and PDF copies of the parties' signatures on this Agreement shall be deemed originals.

22.     **Incorporation of Recitals.**  The recital provisions set forth at the beginning of this Agreement are expressly incorporated into and as terms and conditions of this Agreement.

**IN WITNESS WHEREOF,** the parties have read and understood the terms and conditions of this Agreement, agree to be bound by all of its provisions, and have executed this Agreement on the date shown by their signatures below.

 

 

**MADISON-KIPP CORPORATION**

**KATHLEEN McHUGH**
Dated: July 12, 2013

By: _____
     Authorized Representative
     Dated:  July __, 2013

**DEANNA SCHNEIDER**
Dated: July 12, 2013

**CONTINENTAL CASUALTY COMPANY**

By: _____
     Thomas M. Ryan
     Resolute Management, Inc., as
     administrator on behalf of
     Continental Casualty Company
     Dated:  July __, 2013

16

20.     **Amendment or Modification.**  This Agreement may be amended or modified only by a written instrument signed by all parties to this Agreement.

21.     **Originals.**  Facsimile and PDF copies of the parties' signatures on this Agreement shall be deemed originals.

22.     **Incorporation of Recitals.**  The recital provisions set forth at the beginning of this Agreement are expressly incorporated into and as terms and conditions of this Agreement.

**IN WITNESS WHEREOF,** the parties have read and understood the terms and conditions of this Agreement, agree to be bound by all of its provisions, and have executed this Agreement on the date shown by their signatures below.

MADISON-KIPP CORPORATION

By: _____

_____
**KATHLEEN McHUGH**
Dated: July ___, 2013

Authorized Representative
Dated:  July 12, 2013


_____
**DEANNA SCHNEIDER**
Dated: July ___, 2013

**CONTINENTAL CASUALTY
COMPANY**

By: _____

Thomas M. Ryan
Resolute Management, Inc., as
administrator on behalf of
Continental Casualty Company
Dated:  July ___, 2013

20.     **Amendment or Modification**.  This Agreement may be amended or modified only by a written instrument signed by all parties to this Agreement.

21.     **Originals**.  Facsimile and PDF copies of the parties' signatures on this Agreement shall be deemed originals.

22.     **Incorporation of Recitals**.  The recital provisions set forth at the beginning of this Agreement are expressly incorporated into and as terms and conditions of this Agreement.

**IN WITNESS WHEREOF**, the parties have read and understood the terms and conditions of this Agreement, agree to be bound by all of its provisions, and have executed this Agreement on the date shown by their signatures below.

**MADISON-KIPP CORPORATION**

_____         By: _____
**KATHLEEN McHUGH**                      Authorized Representative
Dated: July __, 2013                     Dated: July __, 2013


_____         **CONTINENTAL CASUALTY**
**DEANNA SCHNEIDER**                **COMPANY**
Dated: July __, 2013
                                    By: _____
                                         Thomas M. Ryan
                                         Resolute Management, Inc., as
                                         administrator on behalf of
                                         Continental Casualty Company
                                         Dated: July 2, 2013

16

**COLUMBIA CASUALTY COMPANY**

By: _____
Thomas M. Ryan
Resolute Management, Inc., as
administrator on behalf of Columbia
Casualty Company
Dated: July /2, 2013


**UNITED STATES FIRE
INSURANCE COMPANY**

By: _____
RiverStone Claims Management,
LLC as claims administrator for U.S.
Fire Insurance Company
Dated: July __, 2013

**COLUMBIA CASUALTY COMPANY**

By: _____

     Thomas M. Ryan
     Resolute Management, Inc., as
     administrator on behalf of Columbia
     Casualty Company
     Dated:  July ___, 2013


**UNITED STATES FIRE**
**INSURANCE COMPANY**

By: _____

     RiverStone Claims Management,
     LLC as claims administrator for U.S.
     Fire Insurance Company
     Dated:  July *11*, 2013

17

# EXHIBIT 1
## (Class Area Map)



# EXHIBIT 2

(List of Class Area Properties)

## CLASS AREA PROPERTY ADDRESSES

102 S. Marquette Street
106 S. Marquette Street
110 S. Marquette Street
114 S. Marquette Street
118 S. Marquette Street
126 S. Marquette Street
128 S. Marquette Street
130 S. Marquette Street
134 S. Marquette Street
138 S. Marquette Street
142 S. Marquette Street
146 S. Marquette Street
150 S. Marquette Street
154 S. Marquette Street
162 S. Marquette Street
166 S. Marquette Street
202 S. Marquette Street
206 S. Marquette Street
210 S. Marquette Street
214 S. Marquette Street
222 S. Marquette Street
226 S. Marquette Street
230 S. Marquette Street
233 Waubesa Street
237 Waubesa Street
241 Waubesa Street
245 Waubesa Street
249 Waubesa Street
253 Waubesa Street
257 Waubesa Street
261 Waubesa Street
265 Waubesa Street
269 Waubesa Street

# EXHIBIT 3
## (Settlement Notice)

## IN THE UNITED STATES DISTRICT COURT
### FOR THE WESTERN DISTRICT OF WISCONSIN

KATHLEEN McHUGH and
DEANNA SCHNEIDER,
Individually and on behalf of
all persons similarly situated,

Plaintiffs,

-v-

Case No. 11-cv-724-bbc

MADISON-KIPP CORPORATION,
CONTINENTAL CASUALTY
COMPANY, COLUMBIA CASUALTY
COMPANY, and UNITED STATES FIRE
INSURANCE COMPANY,

Defendants.

## NOTICE OF CLASS ACTION SETTLEMENT

To:     ALL MEMBERS OF THE CERTIFIED CLASS IN THIS CASE:
        PLEASE READ THIS NOTICE CAREFULLY.

A settlement has been reached in this case, under which members of the Class previously certified by the Court in this case are entitled to receive monetary and/or remediation benefits. Because this case is a class action, the law requires judicial approval of the settlement in order for it to be effective. On _____, 2013, the Court directed that this Notice of Class Action Settlement ("Settlement Notice") be sent to the Class. This matter is scheduled for a hearing on _ _____, 2013, when the Court will consider whether to grant final approval to the settlement.

This Settlement Notice explains the general terms of the settlement, your rights concerning approval of the settlement, and what you need to do if you wish to receive monetary and remediation benefits from the settlement if it is approved.

### THE PROPOSED SETTLEMENT

Plaintiffs, Kathleen McHugh and Deanna Schneider (collectively the "Class Representatives"), and the Defendants, Madison-Kipp Corporation ("MKC"), Continental Casualty Company, Columbia Casualty Company, and United States Fire Insurance Company (collectively, the "Settling Defendants"), have agreed to the settlement described below. A complete version of the Settlement Agreement and Limited Release are available for your review at www.vblhc.com. The Class Representatives and Class Counsel believe that the settlement is fair, reasonable and in the best interests of the Class.

The main terms of the settlement are as follows:

**Cash Payment:** The Settling Defendants shall make a cash payment to the Class of **Four Million Six Hundred Thousand Dollars ($4,600,000.00)** (the "Settlement Funds"). The Settlement Funds shall be distributed as follows: 1) subject to Court approval, Class Counsel shall receive one-third of the Settlement Funds in attorneys' fees, plus reimbursement of costs and expenses incurred in connection with this lawsuit; 2) subject to Court approval, the Class Representatives shall each receive $10,000 for their diligent assumption and performance of the duties and responsibilities of class representatives; and 3) the remaining portion of the Settlement Funds (the "Class Payments") shall be distributed to those members of the Class who own Class Area properties and who timely submit the settlement claim form (the "Claim Form") enclosed with this Settlement Notice. The Class Payments shall be distributed to owners of Class Area properties based upon the percentage of each property's assessed value in relation to the assessed values of all properties owned in the Class Area by Class members. There are 33 properties in the Class Area owned by Class members, and Class Counsel estimates that **the average monetary payment per property, assuming all 33 owners submit Claim Forms, will be approximately $82,000 per property.** The payment will likely be less than this for properties which have lower than average assessed values and will likely be more than this for properties which have higher than average assessed values. Further, in the event that any Class member opts out of the settlement, the amount of the overall settlement monetary payment will be reduced by the ratio of the opting out Class member's assessed value of his/her residence to the total assessed value of all Class members' residences multiplied by the total monetary payment. **PLEASE NOTE THAT TO RECEIVE A SHARE OF THE CLASS PAYMENTS YOU MUST TIMELY SUBMIT THE CLAIM FORM ENCLOSED WITH THIS SETTLEMENT NOTICE. THE DEADLINE FOR SUBMITTING THE CLAIM FORM IS [fill in deadline established by the Court], 2013**.

**Investigation and Remediation of the Class Area:** As a settlement benefit flowing to all residents and/or owners of Class Area properties, MKC has agreed that it shall continue to perform such investigation and remediation of the Class Area to address environmental conditions at and migrating from MKC's Waubesa Street plant (the "Facility") as is required of MKC by the Wisconsin Department of Natural Resources ("WDNR"), the United States Environmental Protection Agency ("USEPA") or by other federal, state or local authorities, but reserves the right to exercise appeal rights in accordance with applicable law. Please note that opting out of this settlement means that you will not receive the house-specific remediation actions listed in paragraphs (A) and (B) below. Without limitation of the foregoing, the following remedial and other measures shall be taken with respect to environmental and other conditions in, or potentially impacting, the Class Area:

      A.    **Sub-Slab Depressurization Systems.** MKC, at its sole cost and expense, shall pay for and coordinate the installation of a sub-slab depressurization system ("SSDS") in every Class Area home that does not currently have one and whose property owner submits the Claim Form electing to have a SSDS installed on their property. With respect to these new SSDS units and the existing SSDS units (previously installed in the Class Area by either MKC or WDNR), MKC shall, at its sole cost and expense, for a period of five (5) years 1) inspect these SSDS units once per year to ensure that they are operating as designed and installed, 2) repair and maintain these SSDS units to keep them in reasonable operating condition, and 3) replace any SSDS units which are not operating as designed and installed and which cannot be quickly and cost effectively repaired. **PLEASE NOTE THAT IF YOU DO NOT ALREADY HAVE A SSDS INSTALLED ON YOUR PROPERTY AND WISH TO RECEIVE THIS SSDS**

**BENEFIT UNDER THIS SETTLEMENT, YOU MUST TIMELY SUBMIT THE CLAIM FORM ENCLOSED WITH THIS SETTLEMENT NOTICE. THE DEADLINE FOR SUBMITTING THE CLAIM FORM IS [fill in deadline established by the Court], 2013;**

    B. **Soil Removal.** For each Class Area home whose property owner submits a Claim Form electing soil removal, MKC shall arrange for the removal of the top one foot (12 inches) of easily accessible exposed soil in areas that are currently lawn or garden areas (i.e., soil removal is not required in paved areas of these back yards, those areas on which garages or other permanent structures are affixed, or areas that would require removal of trees, bushes or shrubs) on that Class Area property's back yard which abuts the Facility, and replace the removed soil with clean fill and sod. MKC shall bear all costs of this work, including the disposal costs of the removed soils. If you are an owner of a property on Waubesa Street involved in the current PCB removal project, that project will continue on the terms in the written agreements you signed, and you will have the additional right to have the other areas in your back yards addressed pursuant to this provision of the settlement. **PLEASE NOTE THAT IF YOU WISH TO RECEIVE THIS SOIL REMOVAL BENEFIT UNDER THIS SETTLEMENT, YOU MUST TIMELY SUBMIT THE CLAIM FORM ENCLOSED WITH THIS SETTLEMENT NOTICE. THE DEADLINE FOR SUBMITTING THE CLAIM FORM IS [fill in deadline established by the Court], 2013;**

    C. **SVE System.** MKC has installed a soil vapor extraction ("SVE") system at the Facility to mitigate the migration of vapors off-site from the Facility. MKC shall continue to operate the SVE system until it is deemed by the WDNR to be no longer required;

    D. **Vapor Probes.** MKC has installed a network of vapor probes at the Facility to monitor vapor levels. MKC shall continue to maintain the existing vapor probe network and continue monitoring vapor levels until the WDNR deems this unnecessary;

    E. **Groundwater Remediation.** MKC will commit to the actions directed by the WDNR relative to groundwater remediation, but at a minimum will deploy in situ chemical oxidation treatment to the shallow (unconsolidated) zone to mitigate against further vapor intrusion off-site from the Facility, but reserves the right to exercise appeal rights in accordance with applicable law;

    F. **Public Drinking Water Supply.** MKC will continue to work with WDNR and Madison city officials to take such reasonable steps as necessary to protect City Well 8 or other public drinking water sources from any impact attributable to the Facility; and

    G. **Facility Clean Up and Closure.** MKC will commit to other work as directed by the WDNR or USEPA to restore the environment to the extent practicable and to otherwise achieve regulatory closure or a determination that no further active remediation is needed with respect to the Facility.

**Release:** The Agreement provides that the Class Representatives and all members of the Class shall broadly release the Settling Defendants and all of their affiliated entities from all claims, damages or remedies which were or could have been asserted in this lawsuit concerning environmental conditions or other conditions of any kind at the Facility or in the Class Area, including but not limited to any property damage or diminution in property value in any way related to or based upon the presence in the Class Area of contaminants allegedly originating

3

from the Facility. The release provision in the Agreement, however, does not preclude or limit in any way the Class Representatives or any Class member from asserting individual claims against any of the Settling Defendants alleging sickness, disease, physical injury or death caused by exposure to chemicals alleged to have been released from the Facility, and does not preclude or limit in any way the Settling Defendants' defenses to any such preserved claims or allegations. The Class Representatives, each Class member who does not opt out of this settlement, and Class Counsel warrant and represent to the Settling Defendants that they have not been diagnosed with, are not aware of, and do not have any symptoms that they suspect could be associated with any sickness, disease, or physical injury which may have been caused to them by the action or inaction of any of the Settling Defendants and all of their affiliated entities.. In the event the Settling Defendants or their contractors perform future environmental investigation or remediation in the Class Area, the Agreement does not act to release MKC from any damage to real or personal property in the Class Area which is caused by such future investigation or remediation work and does not act to release MKC from any claims for compensation related to required relocation during future investigations or remediation work.  The full text of the release provision is contained at Paragraph 4 of the Agreement and can be viewed by you at www.vblhc.com.

## FAIRNESS HEARING

A hearing will be held on the fairness of the proposed settlement.  At the hearing, the Court will be available to hear any objections and arguments concerning the fairness of the proposed settlement.  The hearing will take place on **[fill in date], 2013 at [fill in time]** before Judge Barbara B. Crabb, Courtroom 260, Unites States District Court Building, 120 N. Henry Street, Madison, Wisconsin 53703.

## YOUR OPTIONS

You have the following three options in connection with this settlement:

1.      If you are in favor of the settlement being approved, you do not need to attend the Final Approval Hearing.  If you are an owner of property in the Class Area and wish to receive the monetary and/or remediation benefits available to you under this settlement, you must complete and return the Claim Form enclosed with this Settlement Notice. The Claim Form is also available at www.vblhc.com.  **To be valid, your Claim Form must be postmarked no later than [fill in deadline], 2013 and be mailed to Class Counsel at either of the addresses listed below**.

2.      If you object to the settlement, you must file your objection in writing with the Clerk of the United States District Court for the Western District of Wisconsin, Room 320, Unites States District Court Building, 120 N. Henry Street, Madison, Wisconsin 53703 and serve a copy of your objection on Class Counsel at the address listed below. **To be valid, the objection must be received by the Clerk of the Court on or before [fill in deadline], 2013**, and must include your name and address, proof of your membership in the Class, refer to the name and number of the case, and include a statement of the reasons why you believe that the Court should find that the proposed settlement is not in the best interests of the Class. Please note that it is not sufficient to simply state that you object. You must in writing state reasons why you believe that the settlement should not be approved.  In case the Court might decide to overrule your objection and approve the settlement over your objection, you should mail a completed

Claim Form to Class Counsel at the same time you file your objection if you wish to receive settlement benefits if the settlement is approved.

3.       You have the right to opt out, or exclude yourself, from the Class.  If you opt out of the Class, you will not be bound by the result in this case, whether favorable or unfavorable to the Class.  However, if you opt out of the Class you will not be entitled to share in any of the monetary and remediation benefits described above.  If you wish to opt out of the Class, you must send a first class mail letter setting forth your name, present address, and a statement that you wish to opt out of the Class.  **To be valid, the opt out request must be postmarked on or before [fill in deadline], 2013 and be mailed to Class Counsel at either of the addresses listed below.**
If the settlement is not approved, the lawsuit will proceed against the Settling Defendants as if no settlement had been attempted.  In that event, the Settling Defendants will retain the right to contest the merits of the claims being asserted against them in the lawsuit.  There can be no assurance that if the settlement is not approved, the Class will recover more than is provided for in the settlement, if anything.

## INQUIRIES

Any questions concerning this Settlement Notice or the proposed settlement can be directed to Class Counsel at the addresses below or by calling Class Counsel:

Edward J. Manzke
Shawn M. Collins
The Collins Law Firm, PC
1770 North Park Street
Suite 200
Naperville, IL 60563
Telephone: (630) 527-1595

Michael D. Hayes
Norman B. Berger
Varga Berger Ledsky Hayes & Casey
125 South Wacker Drive
Suite 2150
Chicago, IL 60606
Telephone: (312) 341-9400

**PLEASE DO NOT CALL OR WRITE THE COURT OR THE CLERK OF THE COURT WITH ANY QUESTIONS CONCERNING THE LAWSUIT OR THE SETTLEMENT.  THE COURT AND THE CLERK OF THE COURT CANNOT ANSWER QUESTIONS CONCERNING THE LAWSUIT OR THE SETTLEMENT.**

Dated: _____, 2013

**BY ORDER OF THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF WISCONSIN**

# EXHIBIT 4
(Final Approval Order)